UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TAYLOR BROWN,　　　　Case No.: 19-11509
　　　　Plaintiff,
v.　　　　　　　　　　　　　　Thomas L. Ludington
　　　　　　　　　　　　　　　United States District Judge
KLOTZ,
　　　　Defendant.　　　　　　Curtis Ivy, Jr.
_____/　United States Magistrate Judge

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 52) AND TERMINATE
AS MOOT REMAINING PENDING MOTIONS (ECF Nos. 59, 60, 61)**

I.　　**PROCEDURAL HISTORY**

Plaintiff Robert Taylor Brown filed this prisoner civil rights suit on May 22,

2019, without the assistance of counsel.  (ECF No. 1).  Two weeks later the Court

issued an Opinion and Order dismissing all defendants except defendant Klotz and

all claims against Klotz except the First Amendment retaliation claim.  The Court

dismissed the discriminatory harassment, cruel and unusual punishment, and due

process claims for failure to set forth factual allegations to support the claims.

(ECF No. 7).  Plaintiff filed an amended complaint on December 18, 2020,

including the claims that were previously dismissed against Klotz.  (ECF No. 43).

After the close of the discovery period, Klotz moved for summary judgment

directed at the amended complaint.  (ECF No. 52).  Plaintiff responded (ECF No.

55) and filed a motion for appointment of counsel and for a jury trial (ECF Nos. 59, 60).  The latter motion includes a reiteration of Plaintiff's arguments in response to the motion for summary judgment.  Plaintiff also filed a motion for summary judgment of his own on February 17, 2022.  (ECF No. 61).

This case was referred to the undersigned for all pretrial matters.  (ECF No. 36).  For the reasons discussed below, the undersigned recommends that Klotz's motion for summary judgment be granted and the remaining pending motions be terminated as moot.

## II.    FACTUAL BACKGROUND

Attached to the unverified amended complaint are a May 2, 2019 grievance Plaintiff wrote against Klotz, a May 5, 2019, illegible grievance (likely written against Klotz for conduct described below), the Class I Misconduct hearing report related to the main subject of this lawsuit, and an unrelated misconduct report written by non-party Officer Snyder.  (ECF No. 43).  Defendant attached the May 5, 2019 misconduct ticket, the related investigation and hearing report, and her own affidavit to her motion.  Plaintiff did not provide any evidence in response to Klotz's motion or in support of his own motion for summary judgment.

While there are some factual disputes, largely the case is undisputed.  Klotz worked as a corrections officer at the G. Robert Cotton Correctional Facility where Plaintiff was confined during the time relevant to the claims.  (ECF No. 1, 43, 52,

PageID.370).  Plaintiff alleged Klotz "retaliated by discriminatory harassment affecting workly [sic] duties."  (ECF No. 43, PageID.241-42).  On April 30, 2019, Plaintiff filed a grievance against Klotz for "inappropriate actions" that were not described.  (*Id.* at PageID.242).  This grievance was not provided to the Court.  On May 5, 2019, Klotz issued a Class I misconduct ticket against Plaintiff for Possession of Dangerous Contraband.  She wrote that while conducting a shakedown of Plaintiff's unit, she discovered a brown unmarked bottle containing a liquid substance that smelled of bleach.  Dismissed defendant Sgt. Nevins confirmed the bottle smelled of bleach.  This bottle was found on the top shelf of a locker in Plaintiff's area of control.  (ECF No. 52, PageID.337).  Plaintiff alleged Klotz "forg[ed]" the ticket.  (ECF No. 43, PageID.242).  He asserted the ticket was issued in retaliation for a civil rights lawsuit filed against Klotz's co-worker, Officer Snyder.  The same day he filed another grievance against Klotz.

Because of the ticket, Plaintiff was held in segregation from May 5 through May 14, 2019.  (*Id.* at PageID.244).  He asserts his placement in segregation was an Eighth Amendment violation because it "increase[ his] confinement" and caused him to experience post-traumatic stress disorder.  (*Id.* at PageID.245).

The prison held a hearing on the Class I misconduct on May 14, 2019.  According to the hearing officer, Plaintiff pleaded not guilty of the charge.  He admitted the bottle was his, but asserted it only contained water.  As further

support, he maintained the cap was dropped on the floor, which necessitated washing.  The cleaning solution he used caused the bottle to smell of bleach.  He also said his attorney told him to say the misconduct ticket was written in retaliation because he has pending § 1983 litigation.  (ECF No. 52, PageID.361).

The hearing officer rejected the retaliation claim because Plaintiff had no reason to believe the ticket was written due to his pending litigation, other than his attorney telling him to say so, and he admitted possessing the bottle that smelled like bleach.  In any event, the ticket was dismissed  because it was not "re-reviewed" with Plaintiff according to prison policy.  (*Id.*).  Plaintiff alleged the facts surrounding the dismissal amounted to a due process violation.  (ECF No. 43, PageID.243).

Finally, Plaintiff alleged Klotz violated the Fourteenth Amendment when she abused the "policies, procedures and rules in seizing Plaintiff's property connection [sic] to co-worker's unlawful act depriving of a hearing per rules and then writing false misconducts after false misconduct as a pattern to further violate my rights and deny me fairness and due process."  (*Id.* at PageID.245).  There was no further factual development of this claim.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   <u>Standard of Review</u>

Summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When evaluating a motion for summary judgment, the Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

That Plaintiff is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir.

2004)).  The Sixth Circuit has made clear that, when opposing summary judgment,

a party cannot rely on allegations or denials in unsworn filings and that a party's

"status as a *pro se* litigant does not alter [this] duty on a summary judgment

motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a *pro se* plaintiff because he "failed to present

any evidence to defeat the government's motion").

    B.   <u>Discussion</u>

As a preliminary matter, the undersigned will first address Klotz's motion

for summary judgment as it was the first motion  filed.  All claims against Klotz

are addressed separately.

    1.   First Amendment Retaliation

To establish a claim of First Amendment retaliation, a plaintiff must show

(1) he engaged in protected conduct; (2) an adverse action was taken against him

that would deter a person of ordinary firmness from continuing to engage in that

conduct; and (3) there is a causal connection between elements one and two; in

other words, the adverse action was motivated at least in part by the plaintiff's

protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"Under the third element, 'the subjective motivation of the defendants is at issue.'"

*Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018) (quoting *Thaddeus-X*, 175

F.3d at 399). The burden then shifts to the defendant, and "'[i]f the defendant can

show that he would have taken the same action in the absence of the protected

activity, he is entitled to prevail on summary judgment.'" *Id.* at 267 (quoting

*Thaddeus-X*, 175 F.3d at 399).

Klotz argues this claim fails for various reasons (1) Plaintiff cannot show

she was motivated by his protected conduct because she was unaware of the §

1983 lawsuit filed against a co-worker, (2) Plaintiff's claim is precluded because

he had a hearing on the misconduct ticket in front of an administrative law judge

who rejected the retaliation defense, and (3) she can show she would have taken

the same actions regardless of Plaintiff's protected conduct. (ECF No. 52,

PageID.315-16).

As the first and third arguments relate to a First Amendment analysis, they

are addressed first. Plaintiff, without evidentiary support, insists Klotz was

notified about the lawsuit "through Sgt. Nevins." (ECF No. 55, PageID.378). This

appears to be a reference to Nevins' review of one of Plaintiff's grievances. On

April 30, 2019, three days before issuance of the ticket, he filed a grievance

complaining of Klotz allegedly targeting him and treating him with

"discriminatory harassment" because of his lawsuit against corrections officer

Snyder. The prison received the grievance on May 2, 2019. (ECF No. 43,

PageID.249). The Step I response reflects Klotz was interviewed and stated she

was not discriminating against Plaintiff.  (*Id.* at PageID.250).  The respondent

signed the response on May 6, 2019.  It is not clear from the Step I response

whether Klotz was interviewed on the grievance before or after she issued the

misconduct ticket on May 5, 2019.  In her affidavit, Klotz stated she was unaware

of the lawsuit against Snyder at any time during April or May 2019.  (ECF No. 52,

PageID.370, at ¶ 4).

The Court faces a sworn statement from Klotz that she was unaware of

Plaintiff's lawsuit against Snyder during May 2019 and the ambiguous grievance.[1]

The Court must draw all reasonable inferences in Plaintiff's favor.  It is reasonable

to infer Klotz was informed of the lawsuit during the grievance interview because

the lawsuit is the basis for the retaliation claim in the grievance.  Yet it would be a

stretch to infer she was interviewed *before* she wrote the misconduct ticket.  To do

so would require an assumption—not an inference—that a fact exists.  Thus, the

jury would consider Klotz's sworn statement that she was unaware of the lawsuit

and that she was likely informed of the Snyder lawsuit, but not necessarily before

she wrote the ticket.  A reasonable jury could find in Klotz's favor that she was

unaware of the protected conduct before she wrote the ticket.

As to the third argument, even if Plaintiff had satisfied the elements of his

retaliation claim, Klotz can establish she would have written the ticket even with

---

[1] Plaintiff's unsworn statements in his brief are not evidence on which a jury could rely.

no protected conduct.  Though Plaintiff insists in his briefs and unverified amended

complaint that Klotz issued the ticket only to retaliate, and suggests the ticket was

false, there is no *evidence* to that effect that a jury could consider in his favor.  The

only evidence presented establishes Klotz wrote the ticket for possession of

contraband because Plaintiff's bottle smelled as though it contained bleach—a

substance prisoners were not allowed to have.  (ECF No. 52, PageID.321;

PageID.337).  And Plaintiff admitted to possessing the bottle and that it smelled

like bleach (even if because he cleaned the top with cleaning solution).  Klotz also

stated in her affidavit that during April and May 2019, she treated Plaintiff the

same as any other prisoner and all decisions relevant to him were made in

accordance with prison policies and procedures.  She provided, "No decisions

made regarding prisoner Brown were related to any lawsuit(s) that he filed."  (*Id.*

at PageID.370, ¶¶ 6-7).  Plaintiff did not address this argument and the supporting

evidence in any of his filings.

     As explained, there is evidence on which a jury could find that, even if

Plaintiff satisfied the first three elements of the claim, Klotz would have issued the

ticket for possession of contraband regardless of the lawsuit against her co-worker.

Plaintiff failed to marshal evidence to create an issue of material fact here; a jury

cannot except statements in a brief as evidence.  Thus, Klotz should be granted

summary judgment on the retaliation claim.

In light of the conclusions, above, and in the interest of judicial economy,

the undersigned will not address the remaining preclusion argument.[2]

> 2.     Claims Added Back to Amended Complaint

Defendant argues Plaintiff's re-added claims should be dismissed for failure

to state a claim on which relief can be granted, and alternatively, that she is entitled

to judgment as a matter of law on those claims.

For her initial argument, Klotz relies on the well-known *Twombly* and *Iqbal*

standards that require a complaint have enough factual detail to state a plausible

claim to relief on its face. (ECF No. 52, PageID.304-05). *Twombly*, *Iqbal*, and

their progeny are typically associated with a motion to dismiss under Fed. R. Civ.

P. 12(b)(6). Since Klotz has already answered the amended complaint, she can no

longer bring a Rule 12(b)(6) motion, which is perhaps why she did not cite Rule

---

[2] To determine whether a State administrative agency's factual determinations are binding, the Court evaluates four factors looking to the agency's actions and the process due to the litigants. *Peterson v. Johnson*, 714 F.3d 905, 912-14 (6th Cir. 2013) (citing *Elliott*, 478 U.S. 788 (1986)). The fourth factor states that the Court must give the agency's findings of fact the same preclusive effect it would be given in state courts. The initial questions to answer here are whether "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the parties had a full and fair opportunity to litigate the issue; and (3) there is mutuality of estoppel." *Id.* at 914 (citing *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006)). Klotz did not address these three factors. Most troubling is her failure to address whether the retaliation defense was a question of fact essential to the judgment that was actually litigated. Notably, Klotz was not quested on the defense and the retaliation defense was not essential to the judgment (dismissal due to procedural error).

12(b)(6) in her brief.  Her arguments for dismissal under this standard, however, more properly fall under Fed. R. Civ. P. 12(c) as a motion for judgment on the pleadings.  The Rule 12(c) analysis is the same as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006) ("A rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted is nearly identical to that employed under a Rule 12(b)(6) motion to dismiss.") (citations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Paskvan v. City of Cleveland Civ. Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

Defendant also argues, to the extent that the claims were sufficiently stated, they lack merit and summary judgment should be awarded in her favor under the summary judgment principles discussed above.

Because Klotz properly supported her arguments for dismissal, the undersigned will address the remaining claims under the dismissal standards.  That said, in the interest of thoroughness, and considering Plaintiff is proceeding without legal training, the undersigned will also address the claims under the summary judgment standard.

### a.     Discriminatory Harassment

The particulars of this claim are unclear from the face of the amended complaint and Plaintiff did not address the harassment claim in his response brief. (*See* ECF No. 55).  In his complaint, he stated Klotz "retaliated by discriminatory harassment" in writing the misconduct ticket discussed above but failed to provide anything else that illuminates a discrimination claim.  (ECF No. 43, PageID.241-42).  What followed the "discriminatory harassment" statement is an account of the misconduct ticket and retaliation claim.

The equal protection clause prohibits state actors from denying "to any person within [their] jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.  This clause requires that "similarly situated individuals" be treated similarly.  *Nicholson v. City of Westlake*, 76 F. App'x 626, 629 (6th Cir.

2003) (citation omitted). The "threshold element" is "disparate treatment." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). If disparate treatment is shown, then the analysis to be applied depends on the Plaintiff's classification. A plaintiff may state a claim for an equal protection violation by alleging "discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently from others similarly situated without any rational basis for the difference." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011).

This claim should be dismissed for Plaintiff's failure to set forth any factual allegations to support the claim. Plaintiff did not allege any facts to make a plausible claim that similarly situated prisoners did not face the same treatment by Klotz—that Klotz did not issue Class I misconduct tickets against any other prisoner for violating prison rules. Plaintiff also did not marshal evidence to defeat summary judgment suggesting Klotz treated him differently from similarly situated prisoners.[3]

---

[3] Even if Plaintiff alleged he was treated differently, the claim would fail. When, as here, the plaintiff does not allege the burden of a fundamental right or membership in a suspect or quasi-suspect class, courts evaluate the claim under rational basis review. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260-61 (6th Cir. 2006). Under "rational basis" review, courts will not overturn government action "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the

b.    Due Process

Brown's due process allegation is that Klotz violated the Fourteenth Amendment when she abused the "policies, procedures and rules in seizing Plaintiff's property connection [sic] to co-worker's unlawful act depriving of a hearing per rules and then writing false misconducts after false misconduct as a pattern to further violate my rights and deny me fairness and due process." (ECF No. 43, PageID.245).  Reading the complaint liberally, the claim takes two forms: deprivation of property without due process and denial of a hearing.

Klotz construes the allegation as about Plaintiff's stay in segregation throughout the misconduct hearing process.  In his response brief, Plaintiff argues the fact that the misconduct ticket was not properly re-reviewed with him before the hearing constitutes a deprivation of due process.  He also asserts Klotz's alleged falsification of the misconduct ticket violated the law.  (ECF No. 55, PageID.377).

---

court] can only conclude that the [government's] actions were irrational." *Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 84 (2000) (internal quotation marks and citation omitted).

Plaintiff failed to allege a plausible claim or to create an issue of material fact related to whether Klotz's misconduct ticket was so unrelated to penological interests that her actions can be seen as irrational.  The evidence establishes why Klotz wrote the misconduct ticket—because Plaintiff's bottle smelled as though it contained contraband bleach.  Possessing contraband violates prison rules.  So Klotz's actions were not irrational.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, Plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps.  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient. . . ."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to *Sandin*, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998).

First, neither Plaintiff's complaint allegations nor briefing suggest that he faced a possible deprivation that would inevitably affect the duration of his sentence.  Second, he has not alleged or argued that he suffered an "atypical and

significant" hardship in relation to the ordinary incidents of prison life.  What is more, the misconduct charge was taken through the forma prison administrative process—Plaintiff submitted a written personal statement in response to the charge, a hearing investigator provided a report, and he was permitted to make a verbal statement.  (ECF No. 52, PageID.361).  The ticket was dismissed for the failure to re-review it with him, resulting in no disciplinary action, and thus there was no constitutional violation.

As much as Plaintiff contends being placed in segregation throughout the hearing process was the due process violation, the claim fails.  "[I]nmates do not have a liberty interest in freedom from segregation." *Dodson v. Rhodes*, 2021 WL 5015804, at *2 (M.D. Tenn. Oct. 28, 2021) (citing *Miller v. Campbell*, 108 F. Supp. 2d 960, 963 (W.D. Tenn. 2000)).  That is because being placed in temporary segregation does not amount to an atypical or significant hardship on a prisoner. *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983) (segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration.").  Placement in segregation can amount to an atypical and significant hardship only in extreme circumstances. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).  Here, however, there are no allegations about the conditions he faced in segregation that would suggest it was atypical and significant.  He was also housed in segregation for nine days—not an extensive

amount of time.  *See id.* (discussing that a liberty interest has been found in cases involving a period of segregation exceeding five months) (citations omitted).   For these reasons, the claim should be dismissed.

If Plaintiff is contending that Klotz taking the brown bottle that smelled of bleach constitutes a taking of his property without due process, the claim fails.  In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that the negligent deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong.  The *Parratt* doctrine has been extended to cover intentional deprivations of property.  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Hudson v*. Palmer, 468 U.S. 517, 533-36 (1984)).  A plaintiff who brings a § 1983 procedural due process claim "must plead and prove that state remedies for redressing the wrong are inadequate," *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983), otherwise the claim should be dismissed, *see Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999).

Plaintiff's claims fail because he did not allege that state post-deprivation remedies were inadequate to redress his claimed losses.  Further, the Sixth Circuit in *Copeland* summarized the post-deprivation remedies available to state prisoners in Michigan, including an action to recover possession of goods or chattels and a procedure by which an individual may be compensated for alleged unjustifiable acts of state officials.  57 F.3d at 480.  The court determined that "the appeal of

administrative decisions to the state circuit court provides an adequate remedy for violations of due process for purposes of *Parratt v. Taylor.*" *Id.* (citations omitted)*; see also Teague v. Bieganksi*, 2021 WL 5741292, at *2 (E.D. Mich. Dec. 2, 2021) (discussion state post-deprivation remedies available to Michigan plaintiffs). Because adequate state remedies were available to Plaintiff, no deprivation of property without due process resulted. This claim should be dismissed.

Finally, if Plaintiff maintains the allegedly false misconduct ticket was a due process violation, the claim fails. "A prisoner has no constitutionally protected immunity from being falsely accused of misconduct. The prisoner only has a right to due process of law during the disciplinary proceedings against him concerning the allegedly false misconduct charges." *Riley v. Church*, 874 F. Supp. 765, 768 (E.D. Mich. 1994) (citations omitted). A prisoner's right to due process in prison disciplinary proceedings includes the right to (1) written notice of charges at least twenty-four hours before the disciplinary hearing; (2) an opportunity to call witnesses and present documentary evidence; and (3) a written statement of the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974) (noting, however, that the Constitution does not impose the requirement of confrontation and cross-examination in prison disciplinary hearings).

Here, of course, the charge was dismissed because the notice requirement was not met—the amended misconduct ticket was not re-reviewed with Plaintiff in accordance with prison policy. Because the charge was dismissed, there were no restrictions imposed on Plaintiff. Thus, there was no constitutional violation.

c. Cruel and Unusual Punishment

This claim is grounded in Plaintiff's confinement in segregation from the date of the misconduct ticket (May 5, 2019) through the date the charge was dismissed (May 14, 2019). He alleges his stay in segregation violated the Eighth Amendment because it resulted in an increase in his confinement and caused him to experience post-traumatic stress disorder.

To establish an Eighth Amendment violation, the prisoner must allege that he was deprived of the minimal necessities of civilized life and that prison officials were deliberately indifferent to his needs. *Powell v. Washington*, 720 F. App'x 222, 227-28 (6th Cir. 2017) (citation omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To establish deliberate indifference, an inmate must satisfy an objective and subjective prong. *Id.* at 834. The objective prong requires a showing that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* And the subjective prong requires the inmate

20

to show that a prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837.

Plaintiff's placement in segregation, without more, does not amount to an Eighth Amendment violation. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) ("Because placement in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society, it is insufficient to support an Eighth Amendment Claim." (internal quotation marks omitted)). He did not allege or bring forth facts establishing that he was incarcerated under conditions posing a substantial risk of harm or that Klotz deliberately disregarded an excessive risk of harm by issuing a misconduct ticket that would result in Plaintiff's placement in segregation. Rather, the facts establish his placement in segregation was part of the normal course. Klotz submitted Policy Directive 03.03.105 which, at paragraph Q, requires a prisoner charged with a Class I misconduct, like Plaintiff, be placed in temporary segregation. (ECF No. 52, PageID.341). In light of the foregoing, Plaintiff's Eighth Amendment claim fails.

### 3. Qualified Immunity

Klotz argues she is entitled to qualified immunity because Plaintiff has not demonstrated she violated any clearly established rights. (ECF No. 52, PageID.323). The doctrine of qualified immunity means that "'[g]overnment

21

officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Defendant bears the burden of pleading qualified immunity, but Plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test to determine whether qualified immunity is applicable to a particular situation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right."  *Id*.  If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established."  *Id*.  If both questions are resolved in the affirmative, then the doctrine of qualified immunity would not apply and the case could proceed.  Yet if the answer to either question is no, then qualified immunity obtains.  The court

may consider the questions in whichever order the court determines makes the most sense.  *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).  "When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine dispute of fact that the defendant violated a clearly established right."  *Folks v. Petit*, 676 F. App'x 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015)).

As addressed above, Plaintiff has not established that there is a genuine issue of material fact as to his claims that Klotz violated his Constitutional rights.  Thus, the claims fail to satisfy the first inquiry under qualified immunity analysis and Klotz is entitled to qualified immunity.

4.    Plaintiff's Motion for Summary Judgment (ECF No. 61)

The undersigned suggests that this motion be denied as moot considering the recommendation to grant Klotz's motion as a whole and dismiss all claims in this case.

Alternatively, the undersigned further suggests the motion be denied for Plaintiff's failure to support the motion with evidence.  As explained above, "[t]he moving party has the initial burden of proving that no genuine issue of material fact exists," *Stansberry*, 651 F.3d at 486, and he is entitled to judgment as a matter of law, Fed. R. Civ. P. 56.  Plaintiff did not meet his burden because he did not

attach or point to any evidence in support of his motion.  He relies solely on his

own recitation of the facts and his arguments—neither of which a jury can rely on.[4]

This does nothing to meet his burden of proving no issues of material fact exist and

that he is entitled to judgment as a matter of law.

Nor did Plaintiff seek leave to file his motion nearly five months after the

dispositive motion deadline passed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

Defendant's Motion for Summary Judgment (ECF No. 52) be **GRANTED** and that

the case be **DISMISSED**.  The undersigned further **RECOMMENDS** that

Plaintiff's Motion to Appoint of Counsel (ECF No. 59), Motion for Jury Trial

(ECF No. 60), and Motion for Summary Judgment (ECF No. 61) be

**TERMINATED AS MOOT**.  Alternatively, the undersigned recommends

Plaintiff's Motion for Summary Judgment (ECF No. 61) be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

---

[4] He may perhaps also rely on the defendant and this Court to reference the evidence already in the record to add substance and support to his arguments.  That said, the Court must leave the parties to raise their issues on their own.

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 16, 2022        s/Curtis Ivy, Jr.
                                                               Curtis Ivy, Jr.
                                                               United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on March 16, 2022.

<u>s/Kristen MacKay</u>
Case Manager
(810) 341-7850